1
2
3                    UNITED STATES DISTRICT COURT
4                   NORTHERN DISTRICT OF CALIFORNIA
5
6
7    GERARDO ANGEL GARCIA,
8                  Petitioner,              No. C 04-1412 PJH (PR)
9         v.                                **ORDER DENYING PETITION
                                            FOR WRIT OF HABEAS
10   J. SOLIS, Warden,                      CORPUS**
11               Respondent.
12   _____/

13        This habeas corpus petition was filed pro se by a state prisoner pursuant to 28

14   U.S.C. § 2254.  The court ordered respondent to show cause why the writ should not be

15   granted.  Respondent has filed an answer and a memorandum of points and authorities in

16   support of the answer.  Respondent has also lodged exhibits with the court.  Petitioner has

17   not filed a traverse.  The matter is submitted.

18                         **PROCEDURAL BACKGROUND**

19        A Santa Clara County jury convicted petitioner of continuous sexual abuse of a child

20   under fourteen, *see* Cal. Penal Code § 288.5(a); two counts of lewd and lascivious acts with

21   a child by force, violence, duress, menace or fear, *see* Cal. Penal Code § 288(b)(1); and

22   petitioner pled no contest to possession of a controlled substance, *see* Cal. Health & Safety

23   Code § 11350(a).  He was sentenced to fourteen years in prison.

24        The California Court of Appeal affirmed his conviction and denied his habeas petition.

25   The California Court of Appeal also remanded for re-sentencing on the ground that defense

26   counsel was ineffective in failing to properly inform the trial court of its sentencing discretion.

27   The California Supreme Court denied his petitions for review.  Subsequently, petitioner was

28   again sentenced to fourteen years in prison.

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FACTUAL BACKGROUND

The following facts are taken from the opinion of the California Court of Appeal:

The victim, Maria N., was eight years old at the time the alleged offenses occurred and at the time of trial.  Defendant is the cousin of Maria's mother.  At the time of the alleged offenses, defendant lived with Maria's grandfather in a house on State Street in San Jose.

At trial, Maria initially testified that defendant touched her in the basement of her grandfather's house on three or four occasions.  She then provided more specific details about two touching incidents.

First, defendant touched Maria's "bottom" with "[t]he part he pees from," over her clothes.  This happened in the living room of her grandfather's house.  Maria told her mother about this incident.  Her mother said they would let it pass.  She told Maria to let her know if something happened again.

About two or three months later, on June 5, 1999, a second incident occurred.  Maria was playing by herself in the basement of her grandfather's house.  Defendant entered and took her off to the side.  He took her clothes off.  She tried to put them back on but could not.  Defendant "[p]ut the part where he pees from in [her] butt."  Defendant was standing behind Maria, holding onto her with his arms clasped around her stomach.  Maria could not leave.  She was scared.

After the assault, defendant told Maria that he would kill her if she told anyone.  Maria then wrote defendant a note, in Spanish, and left it in the basement.  It said, "I love you [defendant] but it hurts [me]."

While Maria was in the basement, her family was looking for her and calling her name, because they planned to go to the flea market.  When Maria appeared, she had teary eyes and dirty shorts.  Meanwhile, defendant entered the house from the back door.  He appeared to be tense, nervous, and sweaty.  He grabbed a jacket from his room and left the house.  The rest of the family proceeded to the flea market.

At the flea market, Jessica Rodriguez noticed that Maria was walking uncomfortably, pulling her pants away from her private parts.  Rodriguez also noticed that Maria smelled like semen.

Maria's mother found Maria's note the next day.  She asked Maria about it.  Maria expressed fear that her mother would hit her.  Her mother reassured her that nothing would happen to her.  Maria then related that defendant had done something to her with his penis, from behind her.  She did not know if defendant's penis went inside her.

The police came and spoke with Maria that same day.  Maria told an officer that defendant had touched her "cosa," pointing to her crotch area, with his penis.  Maria was distraught during the interview.

Later that day, Maria was examined at Valley Medical Center by Roberta Horoho, a nurse practitioner and physician's assistant.  Horoho noticed redness on the lower half of Maria's labia majora, indicating some sort of friction.  The redness was suggestive of sexual abuse but inconclusive.  Maria told Horoho that she

2

**United States District Court**
For the Northern District of California

1    had pain in her vaginal area when defendant assaulted her.

2           At the preliminary hearing, held on September 16, 1999, Maria testified
     that when they were in the basement, defendant touched her "pochita,"
3    meaning her vagina.  She testified that his penis went inside her vagina one
     time.  She also testified that defendant had touched her butt with his penis.
4
5           In November of 1999, Maria spoke with investigator Carl Lewis.  He
     interviewed her with the intent of clearing up variances in her several
6    descriptions of the basement incident.  Maria told him, on two occasions, that
     defendant had penetrated her buttocks with his penis, not her vagina.
7
            Defendant was initially charged, by information, with aggravated sexual
8    assault of a child under age 14 and 10 or more years younger than the
     defendant  (count 1, § 269), with two forcible lewd acts (counts 2 & 3, § 288,
9    subd. (b)(1)), and with possession of cocaine (count 4, Health & Saf. Code,
     § 11350, subd. (a)).

10          The information was later amended so that count 1 charged defendant
     with continuous sexual abuse of a child (§ 288.5, subd. (a)), instead of
11   aggravated sexual assault of a child.  Defendant successfully moved to
     dismiss count 1 pursuant to section 995 and the People successfully moved
12   to sever count 4.  A second amended information was then filed, charging
     defendant with one count of lewd acts on a child (count 2, § 288, subd. (a))
13   and one count of forcible lewd acts on a child (count 1, § 288, subd. (b)(1)).

14          Defendant was convicted of both charges.  At sentencing, the trial
     court imposed the upper term of eight years for count 1 and the middle term
15   of six years for count 2, to run consecutively.  Defendant then entered a no
     contest plea to the cocaine possession charge, and the trial court imposed
16   the middle term of two years for that count, to run concurrently.

17   Ex. F at 2-4.

18                              **STANDARD OF REVIEW**

19          A district court may not grant a petition challenging a state conviction or sentence on

20   the basis of a claim that was reviewed on the merits in state court unless the state court's

21   adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

22   unreasonable application of, clearly established Federal law, as determined by the

23   Supreme Court of the United States; or (2) resulted in a decision that was based on an

24   unreasonable determination of the facts in light of the evidence presented in the State court

25   proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to

26   mixed questions of law and fact.  *See Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09

27   (2000).  The second prong applies to decisions based on factual determinations.  *See*

28   *Miller-El v. Cockrell*, 537 U.S. 322, 340 (U.S. 2003).

                                          3

United States District Court
For the Northern District of California

1    Under the 'contrary to' clause of 28 U.S.C. § 2254(d)(1), a federal court may grant a

2    writ if the state court's conclusion is "opposite to that reached by this Court on a question of

3    law or if the state court decides a case differently than this Court has on a set of materially

4    indistinguishable facts." *Williams (Terry)*, 529 U.S. at 413.   An 'unreasonable application'

5    occurs when the state court identifies "the correct governing legal principle" from the

6    appropriate Supreme Court decision but "unreasonably applies that principle to the facts of

7    the prisoner's case." *Id.* at 412-13.   The federal court on habeas review may not issue the

8    writ "simply because that court concludes in its independent judgment that the relevant

9    state-court decision applied clearly established federal law erroneously or incorrectly." *Id.*

10   at 411.   Rather, the application must be "objectively unreasonable" to support granting the

11   writ.   *Id.* at 409.

12   In any event, habeas relief is warranted only if the constitutional error at issue is

13   structural error or had a "'substantial and injurious effect or influence in determining the

14   jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 795-6 (2001) (quoting *Brecht v.*

15   *Abrahamson*, 507 U.S. 619, 638 (1993)).   When there is no reasoned opinion from the

16   highest state court to consider the petitioner's claims, the court looks to the last reasoned

17   opinion, in this case that of the California Court of Appeal.   *See Ylst v. Nunnemaker*, 501

18   U.S. 797, 801-6 (1991).

19                                    **DISCUSSION**

20   As grounds for federal habeas relief, petitioner raises nine claims predicated on

21   ineffective assistance of counsel, which may for convenience be divided into three groups.

22   Petitioner asserts that his counsel was ineffective in failing to raise state-law objections

23   that: (1) the trial court lacked jurisdiction over count one and count two; (2) the nurse's

24   testimony was irrelevant and highly prejudicial; (3) the victim's note was inadmissible

25   hearsay; (4) the mother's testimony was inadmissible hearsay; and (5) the prosecutor

26   mischaracterized the evidence by stating that a witness' statements were consistent.   He

27   also contends that counsel was ineffective in: (6) eliciting harmful testimony; (7) failing to

28   object to the prosecutor's mischaracterization of the standard of proof on both state-law

4

United States District Court

For the Northern District of California

1   and constitutional grounds; and (8) failing to object on state-law and constitutional grounds

2   to the prosecutor's improper statement in closing argument that children cannot lie

3   effectively.  Lastly (9), petitioner asserts that the purported ineffectiveness of counsel was

4   cumulatively prejudicial.

5        Petitioner also asserts five due process violations based on erroneous jury

6   instructions.  He claims that his due process rights were violated when: (1) the trial court

7   gave an instruction that "duress" includes "hardship," (2) the trial court failed to give CALJIC

8   No. 2.71, (3) the trial court gave an erroneous instruction on duress and menace, (4) the

9   trial court failed to give CALJIC No. 17.01, and (5) the trial court gave CALJIC No. 17.14.1.

10  **A.    Ineffective Assistance of Counsel**

11       Petitioner raises nine claims related to ineffective assistance of counsel ("IAC")[1].  A

12  claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth

13  Amendment right to counsel, which guarantees not only assistance, but "effective

14  assistance" of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  In order to

15  prevail on an ineffective assistance claim, petitioner must establish two things: deficient

16  performance and resulting prejudice.  *See id.* at 687-694.  First, an attorney's performance

17  qualifies as deficient if it falls below an "objective standard of reasonableness."  *Id.* at 687-

18  688.  Second, prejudice has resulted if there is "a reasonable probability that, but for

19  counsel's unprofessional errors, the result of the proceeding would have been different."

20  *Id.* at 694.  A reasonable probability, moreover, is a "probability sufficient to undermine

21  confidence in the outcome."  *Id.*

22       A difference of opinion as to trial tactics does not constitute denial of effective

23  assistance.  *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981).  The relevant inquiry

24  is not what defense counsel could have done, but "whether the choices made by defense

25  _____

26       [1]As the California Court of Appeal applied *Strickland* in analyzing all of petitioner's
    claims of ineffective assistance of counsel, it's decision was not "contrary to" clearly
27  established federal law under 28 U.S.C. § 2254(d)(1).  *See Williams (Terry)*, 529 U.S. at 413.
    Accordingly, review here is for whether the *Strickland* standard was applied in an "objectively
28  unreasonable" manner.  *Id.*

United States District Court

For the Northern District of California

1  counsel were reasonable" when made.  *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir.

2  1998).  Therefore, "counsel's tactical decisions at trial, such as how to cross-examine a

3  particular witness or whether to ask a particular line of questions, are given great

4  deference" and are ineffective only if they are objectively unreasonable.  *Dows v. Wood*,

5  211 F.3d 480, 487 (9th Cir. 2000).

6      Counsel cannot be ineffective for failing to bring a meritless motion; it is not deficient

7  performance for counsel to fail to make futile motion, and failing to make one cannot be

8  prejudicial.  *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005).

9          **1-5.    IAC Claims Rejected on Appeal on State Law Grounds**

10      Plaintiff's first five ineffective assistance claims are that counsel should have argued

11  that (1) the trial court lacked jurisdiction over count one and count two; (2) the nurse's

12  testimony was irrelevant and highly prejudicial; (3) the victim's note was inadmissible

13  hearsay; (4) the mother's testimony was inadmissible hearsay; and (5) the prosecutor

14  mischaracterized the evidence by stating that a witness' statements were consistent.  The

15  California Court of Appeal determined that under state law none of these arguments would

16  have succeeded.

17      It is well settled that "a state court's interpretation of state law, including one

18  announced on direct appeal of the challenged conviction, binds a federal court sitting in

19  habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  Moreover, the

20  determination of state law by an intermediate appellate court may not be "disregarded by a

21  federal court unless it is convinced by other persuasive data that the highest court of the

22  state would decide otherwise."  *Hicks v. Feiock*, 485 U.S. 624, 629 (1988) (citation omitted).

23      In this case, the California Court of Appeal rejected all five of these claims on the

24  merits under state law and the California Supreme Court denied the petition for review, so

25  clearly the highest court would not "decide otherwise."  *Id.*  The holdings of the court of

26  appeal on these issues of state law therefore are binding on this court.  Because it has

27  been conclusively determined that petitioner's proposed state-law objections would have

28  been futile as to claims one through five, and counsel cannot be ineffective in failing to

United States District Court
For the Northern District of California

1    make futile claims, objections, or arguments, *see Juan H.*, 408 F.3d at 1273, counsel was

2    not ineffective on these grounds asserted by petitioner.

3              **6.    Eliciting Harmful Testimony**

4              Petitioner claims that his counsel was ineffective for eliciting harmful testimony from

5    the victim upon cross-examination.  To satisfy the deficiency prong of *Strickland*, counsel's

6    cross-examination would need to fall below an "objective standard of reasonableness."

7    *Strickland*, 466 U.S. at  at 687-688.  But counsel is given a lot of room in making strategic

8    choices, including how to conduct cross-examination, so long as those choices are

9    reasonable.  *See Dows*, 211 F.3d at 487 ("counsel's tactical decisions at trial, such as how

10   to cross-examine a particular witness or whether to ask a particular line of questions, are

11   given great deference.").

12             The California Court of Appeal found that petitioner's counsel made a "reasonable

13   tactical choice" as he cross-examined the victim:

14             On direct examination by the prosecution, Maria testified that
         defendant came into the basement and moved her off to the side.  He took
15       her clothes off.  She tried to put them back on but was unable to.  Defendant
         put his penis into her buttocks, while holding on to her, clasping his hands
16       over her stomach.  She was not able to leave because he was holding her in
         that manner.
17             During cross-examination, trial counsel asked Maria how defendant
         took her from one part of the basement to another.  She answered, "I don't
18       remember."  Maria also did not remember how defendant took off her clothes.
         Trial counsel asked her to describe "what you tried to do to get away from him
19       when he grabbed you and [took] you to the other part of the basement."
         Maria replied, "Run."  Trial counsel asked, "You ran?"  Maria answered, "Try."
20       Trial counsel asked, "did you yell, did you scream for help, or did you do
         anything like that?"  Maria answered, "I don't remember."  Trial counsel
21       asked, "Did you call for anyone to come down [into] the basement and help
         you?"  Maria replied, "I don't remember."  Trial counsel asked, "**Did you try to
22       pull away from him?"  Maria replied, "Yes."**  Trial counsel asked, "did he
         grab you, pull you back when you tried to pull away from him?"  Maria replied,
23       "No," and then explained, "I couldn't get away from him."  Trial counsel asked
         if Maria's stomach hurt after defendant pulled on it.  She replied, "No."  Trial
24       counsel asked if Maria tried to kick or scratch defendant.  She did not
         remember.
25             The questions trial counsel asked Maria during cross-examination
         indicate that he was attempting to show that defendant did not use force or
26       duress to commit the lewd act in the basement, and attempting to discredit
         her testimony by eliciting her lack of memory for details.  This was a
27       reasonable tactical choice that appeared to be informed by Maria's testimony
         on direct.

28

United States District Court

For the Northern District of California

1   Ex. F at 7-8 (emphasis added).  The emphasized language is the damaging testimony that

2   petitioner contends counsel should not have elicited.

3        Here the tactics pursued by counsel during cross-examination do not fall below an

4   objective standard of reasonableness.  On direct examination, Maria's testimony was very

5   damaging to petitioner.  Ex. F at 7.  On cross-examination, counsel appeared to be probing

6   for inconsistencies in Maria's story and trying to highlight her lack of recall.  Ex. F at 8.  So

7   doing, counsel inadvertently elicited a slightly damaging statement.  But any risk taken was

8   a calculated risk compared to not testing the recall of the prosecution's key witness in front

9   of the jury: and simple disagreement over trial tactics does not equal deficiency.  *See*

10  *Mayo,* 646 F.2d at 375.

11       With so many possible strategic choices inherent in any criminal defense, counsel is

12  free to choose among possible tactics so long as the choice was a reasonable one at the

13  time it was made.  *See Babbitt*, 151 F.3d at 1173.  Here, counsel made a reasonable

14  tactical choice in testing Maria's memory of events and thereby attempting to impeach the

15  credibility of her damaging statements.  This court is deferential to that choice.  *See Dows*,

16  211 F.3d at 487.

17       Because counsel's performance did not fall below an objective standard of

18  reasonableness, there was no deficiency.  Therefore, the state court's application of

19  *Strickland* was not unreasonable and this claim of ineffectiveness of counsel cannot serve

20  as grounds for habeas relief.

21       **7.    Prosecutor's Mischaracterization of the Standard of Proof**

22       Petitioner claims that his counsel was ineffective for failing to object on due process

23  grounds to the prosecutor's alleged mischaracterization of the "beyond a reasonable doubt"

24  standard.  In closing argument, the prosecutor made this argument, as quoted by the Court

25  of Appeal:

26       "[I]n order to acquit the defendant, you would have to believe that
         Maria was lying to her mother, that Maria was lying to the police officers and
27       Carl Lewis, that Maria was lying at the preliminary examination, and that
         Maria was lying to you.  You would have to believe that Maria had some
28       reason to lie based on the evidence.  You would have to believe that the note
         she wrote is not about a sexual assault.  You would have to believe that

United States District Court
For the Northern District of California

1  injuries – the redness to her vagina was just coincidental with her account of
2  the sexual assault.  You would have to believe that her disappearance from
   the house for a period of time the morning of the sexual assault was just
3  coincidental with her account.  You would have to believe that Jessica's
   testimony about her smelling like semen and walking funny was just
4  coincidental with Maria's account.  You would have to believe that Maria's
   sleep problems which started the night of the sexual assault were just
5  coincidental with her account of the sexual assault.  You would have to
   believe each of those things separately, and you would have to believe them
6  all together.  Consideration of all the evidence together would have to lead
   you to that conclusion."

7  Ex. F at 14.

8      Petitioner cites *Cool v. United States,* 409 U.S. 100 (1972), to support the

9  proposition that improperly shifting the burden of proof can violate due process.  *See Cool*

10 *v. United States.*  The *Cool* case, however, is about jury instructions, not prosecutorial

11 argument.  The Court there held that an instruction may violate due process if the

12 "instruction places an improper burden on the defense and allows the jury to convict

13 despite its failure to find guilt beyond a reasonable doubt."  *Cool*, 409 U.S. at 103.

14 Prosecutorial statements, on the other hand, "are not to be judged as having the same

15 force as an instruction from the court" and are less likely to render a trial fundamentally

16 unfair than if the trial court gives an erroneous instruction.  *Boyde v. California*, 494 U.S.

17 370, 384-85 (1989).

18     Still, it is true that improper comments by a prosecutor during closing arguments can

19 violate due process.  *See Darden v. Wainwright*, 477 U.S. 168, 180-81 (1986).  Habeas

20 relief for prosecutorial misconduct, however, can be granted only when the misconduct "so

21 infected the trial with unfairness as to make the resulting conviction a denial of due

22 process."  *Id.* at 181.  The allegedly offending remarks must be considered in light of the

23 "entire proceedings" in assessing whether they caused the trial as a whole to be unfair to

24 the defendant.  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

25 ///

26     The California Court of Appeal noted that the trial court gave the correct standard

27 jury instruction on burden of proof and that the prosecutor quoted it in closing argument.

28 Ex. F at 15.  The court concluded that, taken in context, the argument was simply that the

9

United States District Court

For the Northern District of California

1    jury "should look at all the evidence before determining whether or not it had a reasonable

2    doubt as to petitioner's guilt," so there was no misconduct and failure to object was not

3    ineffective assistance. *Id.*

4         Although other interpretations might be possible, this was not unreasonable.  First,

5    prosecutorial statements, when compared to jury instructions given by the judge, are less

6    likely to render a trial unfair.  *See Boyde*, 494 U.S. at 384-85.  Second, a prosecutor is

7    given leeway to zealously pursue a rightful conviction.  *See Berger v. United States*, 295

8    U.S. 78, 88 (U.S. 1935) (because a prosecutor's closing argument is distinct from a jury

9    instruction "he may strike hard blows," but "he is not at liberty to strike foul ones").  And in

10   this case, by summarizing all the evidence that pointed to guilt, the prosecutor was simply

11   striking "hard blows" by emphasizing that to acquit, the jury needed to have a reasonable

12   doubt based on the evidence as a whole.

13        In the light of the "entire proceedings," the prosecutor's statement fell well short of

14   being misconduct that "so infected the trial with unfairness as to make the resulting

15   conviction a denial of due process."  *Donnelly*, 416 U.S. at 643; *Darden*, 477 U.S. at 181.

16   As a result, any due process objection would have been futile when made.  *See Juan H.*,

17   408 F.3d at 1273.  The California Court of Appeal's conclusion to the same effect was not

18   an unreasonable application of *Strickland* and this claim fails as a basis for habeas relief.

19        **8.      Prosecutor's Argument that Children Cannot Lie Effectively**

20        Petitioner claims that his counsel was ineffective for failing to object to the

21   prosecutor's statement in closing argument that children cannot lie effectively.

22        The California Court of Appeal rejected this claim because prosecutors are allowed

23   to argue matters within the common knowledge and every-day experience of jurors, such

24   as  the ability or inability of children to lie effectively, so the argument was not improper.

25   Ex. F at 13.  The state court's holding that state law was not violated is binding on this

26   court.  *See Bradshaw*, 546 U.S. at 76.  As an objection under state law would have been

27   futile, counsel was not ineffective for failing to raise such an objection.  *See Juan H.*, 408

28   F.3d at 1273.

United States District Court

For the Northern District of California

1    A Confrontation Clause objection would have been equally futile because the jury

2    was instructed that arguments by counsel are not to be considered as evidence, ex. B at

3    321-22, and the jury is presumed to follow its instructions, *Richardson v. Marsh*, 481 U.S.

4    200, 211 (1987).  That is, under the instructions that the jury is presumed to have followed,

5    any factual assertions in the argument were not considered, so petitioner did not have any

6    right to confrontation as to them.

7    As objections under both state law and the Confrontation Clause would have been

8    unsuccessful, the state court's determination that there was no ineffectiveness of counsel

9    was not an unreasonable application of the *Strickland* standard.  *See Juan H.*, 408 F.3d at

10   1273.  This claim fails as grounds for federal habeas relief.

11      **9.    Cumulative Prejudice**

12   Petitioner claims that the errors listed above were cumulatively prejudicial and that

13   ineffectiveness of counsel, in the aggregate, deprived petitioner of his right to a fair trial.  In

14   some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the

15   cumulative effect of several errors may still prejudice a defendant so much that his

16   conviction must be overturned.  *See Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th Cir.

17   2003).  However, where no single constitutional error exists, the cumulative claims cannot

18   aggregate to the level of a constitutional violation.  *See Mancuso v. Olivarez*, 292 F.3d 939,

19   957 (9th Cir. 2002).

20   In *Alcala*, there where multiple constitutional errors that hindered defendant's efforts

21   to challenge crucial elements of proof offered by prosecution.  *Alcala*, 334 F.3d at 893-95.

22   Here, all of petitioners claims of ineffectiveness (1 - 8 above) are distinguishable from

23   *Alcala* because they are either (a) wholly without merit or are (b) of such little merit that

24   they do not constitute a constitutional violation.  Because petitioner has not shown counsel

25   to have been ineffective, there is nothing to aggregate, and this contention is moot.

26   **B.    Jury Instructions**

27   Petitioner claims that his due process rights were violated by five alleged errors in

28   instructing the jury.  A challenge to a jury instruction solely as an error under state law does

United States District Court

For the Northern District of California

1  not state a claim cognizable in federal habeas corpus proceedings.  *Estelle v. McGuire*, 502

2  U.S. 62, 71-72 (1991).  Instead, to obtain federal collateral relief for errors in the jury

3  charge, a petitioner must show that "the ailing instruction by itself so infected the entire trial

4  that the resulting conviction violates due process."  *Id. at* 72.  Therefore, the instruction may

5  not be considered in "artificial isolation," but must be considered "in the context of the

6  instructions as a whole and the trial record."  *Id.*  Failure to give an instruction is less

7  prejudicial than giving an erroneous instruction.  *Henderson v. Kibbe*, 431 U.S. 145, 155

8  (U.S. 1977) ("An omission, or an incomplete instruction, is less likely to be prejudicial than a

9  misstatement of the law").

10      To evaluate an erroneous or ambiguous jury instruction, the court must inquire

11  whether there is a "reasonable likelihood" that the jury has applied the challenged

12  instruction in a way that violates the Constitution.  *Boyde*, 494 U.S. at 380.  If the state

13  court disposed of an instructional error as harmless under an appropriate standard of

14  review, a federal court must first determine whether the state court's harmless error

15  analysis was objectively unreasonable.  *Medina v. Hornung*, 386 F.3d 872, 878 (9th Cir.

16  2004).  If the state court's decisions was indeed unreasonable, the federal court must next

17  determine whether the error had a "substantial and injurious effect or influence" in

18  determining the jury's verdict before granting relief in habeas proceedings.  *See Brecht*, 507

19  U.S. at 637.

20      **1.    "Duress" and "Hardship"**

21      Petitioner claims that his due process rights were violated when the jury was

22  instructed that the definition of "duress" includes "hardship."  The California Court of Appeal

23  concluded that while there was error in the instruction, that error was harmless to petitioner:

24  ///

25  
> We conclude that the trial court erred by including the term "hardship" in its instruction defining the term "duress."  However, the error was not prejudicial.  Misinstruction on the elements of an offense does not require reversal if "it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained' [citations] . . . ."  (*People v. Swain* (1996) 12 Cal.4th 593, 607.)

28  
> Here, the prosecutor did not argue that the jury should convict

12

United States District Court

For the Northern District of California

1    defendant of count 1 based on a direct or implied threat of hardship.  The
     prosecutor first argued that defendant committed count 2 by force when he
2    took Maria's clothes off "without her consent and with her resistance" and
     held her from behind to keep her from leaving.

3
         The prosecutor also argued that defendant committed count 1 by
4    duress, but he did not mention any threat of hardship.  He argued that duress
     was established by defendant's implied threat of force, based on his actual
5    force used to hold Maria, Maria's fear, and defendant's prior sexual assaults
     of Maria.

6
         Moreover, as described above, the evidence clearly showed that
7    defendant committed count 2 by means of force, and there was also
     substantial evidence to support the prosecutor's alternate theory, that
8    defendant committed count 2 out of an implied threat of force.  By contrast,
     there was no substantial evidence that she submitted to defendant because
9    of a threat of hardship.  Under the circumstances here, where the prosecutor
     did not rely on an erroneous legal theory and there was not substantial
10   evidence to support that theory, the instructional error was harmless beyond a
     reasonable doubt.  (*Chapman v. California* (1967) 386 U.S. 18, 24.)
11   Ex. F at 29-30.

12       A state court's determination of harmless error under the appropriate standard of

13   review stands unless objectively unreasonable.  *Medina*, 386 F.3d at 878.  Here the state

14   court used the appropriate standard, that of *Chapman v. California*, 386 U.S. 18, 24 (1967),

15   *see Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993) (*Chapman* provides proper harmless

16   error standard for direct appeals of criminal convictions), so the question is whether the

17   state court's harmlessness holding was objectively unreasonable.

18       Aside from the error in including "hardship," the court properly instructed the jury that

19   the meaning of "duress" was: "direct or implied threat of force, violence, danger, [hardship],

20   or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform

21   an act which otherwise would not have been performed or to acquiesce to an act to which

22   one otherwise would not have been submitted," and further that the "total circumstances,

23   including the age of the victim and her relationship to the defendant, are factors to consider

24   in appraising the existence of duress."  Ex. B at 332.  That is, the inclusion of hardship was

25   minor in the context of the instruction as a whole.

26       Most importantly, however, the prosecutor never relied on a hardship theory of

27   duress, instead arguing the jury should convict on count one based on upon force and the

28   traditional conception of duress.  Ex. B at 281-83**.**  As to count two, he argued that the

13

United States District Court

For the Northern District of California

1  petitioner committed the offense by force and an implied threat of force.  Ex. F at 30.  Thus

2  it was not unreasonable for the court of appeal to conclude that the instructional error was

3  harmless under the *Chapman* standard, so habeas relief is not appropriate on this claim.

4        **2.**      **CALJIC No. 2.71**

5       Petitioner claims that his due process rights were violated when the trial court failed

6  to give CALJIC No. 2.71 after Maria testified that petitioner told her he would kill her if she

7  told anyone about the incident in the basement.  CALJIC No. 2.71 provides that:

8       "An admission is a statement made by the defendant which does not
by itself acknowledge his guilt of the crimes for which the defendant is on trial,
but which statement tends to prove his guilt when considered with the rest of

9  the evidence.  [¶]  You are the exclusive judges as to whether the defendant
made an admission, and if so, whether that statement is true in whole or in

10  part.  [¶]  Evidence of an oral admission of the defendant not made in court

11  should be viewed with caution."

12       The California Court of Appeal concluded that CALJIC No. 2.71 should have been

13  given.  Ex. F at 21.  It also held, however, that under state law it is reversible error to fail to

14  give the instruction sua sponte only if it is "reasonably probable" that the result would have

15  been more favorable to defendant if it had been given, and that it was not reasonably

16  probable in this case.  *Id.* at 21-22.

17       As noted above, failure to give an instruction is less prejudicial than giving an

18  erroneous instruction.  *Henderson*, 431 U.S. at 155.  And petitioner has failed to point to

19  any authority that giving an instruction on oral admissions is required by due process.  Thus

20  the only law applicable to this claim is the general proposition that it is a violation of due

21  process if the failure to given the instruction "so infect[ed] the trial that the defendant was

22  deprived of the fair trial guaranteed by the Fourteenth Amendment."  *Dunckhurst v. Deeds*,

23  859 F.2d 110, 114 (9th Cir. 1988).  The threat to kill Maria if she told anyone about the

24  abuse was superfluous to the theory under which petitioner was convicted, and there was

25  overwhelming evidence to support force or duress.  Ex. F at 22.  Viewing the entire record

26  and the relationship between the omitted instruction and the theory of the crime under

27  which petitioner was convicted, the failure to give CALJIC No. 2.71 in no way "infected the

28  entire trial" in violation of petitioner's due process rights.  *See Estelle*, 502 U.S. at 72.

Therefore, there was no due process violation, so the rejection of this claim by the state courts was not contrary to, nor an unreasonable application of, clearly-established United States Supreme Court authority.

### 3.    "Duress" and "Menace"

The jury was instructed that it could convict petitioner on count one (lewd touching) if it found he committed that offense by duress or menace.  He claims that his due process rights were violated by the trial court's giving this instruction because there was insufficient evidence to support either of those theories.  Further, petitioner contends that it is impossible to tell from the record whether the jury convicted him based on one of those theories.

The California Court of Appeal concluded that there was substantial evidence of duress, so the predicate for petitioner's claim was absent as to that part of it, and that there was no reasonable probability that the jury convicted on a menace theory.

> Here, the prosecutor did not rely on menace as a theory of guilt.  He expressly told the jury, "I don't think this is a menace case." He defined menace as "any threat or act which shows an intention to inflict injury on another," but reminded the jury that "the threat actually came at the very end of the sexual case."  The prosecutor reiterated that this was "not so much a menace case as it is a case of fear of violence and duress and mainly force."

> Thus, the jury was not invited to convict defendant based on a menace theory.  Moreover, even assuming that it was error for the trial court to include the menace theory in its instruction because there was insufficient evidence to support it, reversal would not be required.  This is a case where the "inadequacy of proof is purely factual, of a kind the jury is fully equipped to detect," and therefore "reversal is not required whenever a valid ground for the verdict remains, absent an affirmative indication in the record that the verdict actually did rest on the inadequate ground." (*Guiton, supra*, 4 Cal.4th at p. 1129.)

> Here there were two valid grounds for the conviction of count 1.  As explained above (part II, A, 2), there sufficient evidence to support an instruction and conviction based on duress or force.  In light of the evidence and arguments of counsel, we conclude there is no "reasonable probability" that the jury found defendant guilty of count 1 based on a menace theory. (*Guiton, supra*, 4 Cal.4th at p. 1130.)

Ex. F at 30-31.

Giving an instruction which is not supported by the evidence is not a due process violation.  *Griffin v. United States*, 502 U.S. 46, 55-60 (1991).  This is because a jury is well-

United States District Court

For the Northern District of California

1    suited to determining whether there is any evidence to support an instruction, which is not

2    true when an instruction is legally erroneous; hence there may be a violation of due

3    process when a trial court gives both a legally erroneous instruction and one which is not

4    legally erroneous, but it is otherwise when one theory is supported by the evidence and one

5    is not.  In that situation, as here, submission of an alternative theory which is not supported

6    does not violate due process.  *See id.* at 59.  And in any event, given that there was

7    abundant evidence of force and duress, inclusion of the menace instruction could not have

8    made the trial "fundamentally unfair" so as to violate due process.  *See Estelle v. McGuire*,

9    502 U.S. at 72.  Petitioner's due process rights were not violated.

10       And even if there were constitutional error, habeas relief cannot be granted absent a

11   "substantial and injurious effect" on the verdict.  *Brecht*, 507 U.S. at 637.   In this case,

12   where the menace instruction was not relied upon by the prosecutor, where two viable

13   theories of guilt remained, and where the evidence of guilt itself was overwhelming, any

14   error was indeed harmless.  Ex. F at 31-32.

15       The state courts' rejection of this claim was not contrary to, or an unreasonable

16   application of, clearly established Supreme Court authority.  This claim therefore cannot

17   serve as a basis for habeas relief.

18       **4.       Failure to Give CALJIC No. 17.01**

19       Petitioner claims that his due process rights were violated when the trial court failed

20   to give CALJIC No. 17.01.  More specifically, petitioner contends that his due process rights

21   were violated by the trial court's failure to sua sponte instruct the jury that California law

22   requires the jurors to unanimously agree on the particular criminal act they believe

23   defendant committed, if more than one act could constitute the offense.  According to

24   petitioner, because Maria testified to a variety of acts on multiple occasions, such an

25   instruction was required.

26       Criminal defendants in state court have no federal constitutional right to a

27   unanimous jury verdict.  *See Apodaca v. Oregon*, 406 U.S. 404, 410-12 (1972) (rejecting

28   6th Amendment right to jury trial challenge to 10-2 state jury verdict); *Johnson v. Louisiana*,

United States District Court

For the Northern District of California

1  406 U.S. 356, 359-63 (1972) (rejecting due process challenge to 9-3 state jury verdict).

2  Since a criminal defendant in a state prosecution is not entitled to a unanimous verdict at all

3  under the federal Constitution, the state court's determination that an instruction on jury

4  unanimity was unnecessary under state law in the circumstances of the case cannot

5  possibly be considered a violation of federal due process.

6       Nor does due process require an instruction that the jury unanimously agree about

7  which piece of evidence supports which charge.  The Supreme Court has held that

8  "different jurors may be persuaded by different pieces of evidence, even when they agree

9  upon the bottom line....there is no general requirement that the jury reach agreement on the

10  preliminary factual issues which underlie the verdict."  *McKoy v. North Carolina*, 494 U.S.

11  433, 449 (1990) (Blackman, J, concurring); *see also Schad v. Arizona*, 501 U.S. 624, 631-

12  32 (1991) (rule that jurors not required to agree upon single means of commission of crime,

13  citing *McKoy*, applies equally to contention they must agree on one of alternative means of

14  satisfying mental state element of crime).

15       For these reasons, the state appellate courts' rejection of this claim was not contrary

16  to, or an unreasonable application of, clearly established Supreme Court authority.   This

17  claim therefore fails as basis for habeas relief.

18       **5.     CALJIC No. 17.14.1**

19       Petitioner claims that the trial court  violated his right to due process by giving

20  CALJIC No. 17.41.1 and that such an instruction inhibits jury deliberation and invades jury

21  privacy.  CALJIC No 17.41.1 provides:

22              The integrity of a trial requires that jurors, at all times during their
            deliberations, conduct themselves as required by these instructions.
23          Accordingly, should it occur that any juror refuses to deliberate or expresses
            an intention to disregard the law or to decide the case based on [penalty or
24          punishment, or] any [other] improper basis, it is the obligation of the other
            jurors to immediately advise the Court of the situation.
25
26       The Ninth Circuit has held that there is no "clearly established United States

27  Supreme Court precedent" which establishes that an anti-nullification instruction such as

28  CALJIC 17.41.1 violates a constitutional right. *Brewer v. Hall*, 378 F.3d 952, 955-56 (9th

1    Cir. 2004).  The court therefore held that a California appellate court's rejection of a

2    challenge to 17.41.1 could not be contrary to, or an unreasonable application of, clearly

3    established Supreme Court authority.  *Id.* at 956[2].  In light of *Brewer*, that the trial court

4    gave CALJIC 17.41.1 cannot be the basis for federal habeas relief.

5                                          **CONCLUSION**

6           For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.  The

7    clerk shall close the file.

8           **IT IS SO ORDERED**.

9    Dated:  August 17 2007.        _____

10                                          PHYLLIS J. HAMILTON
                                       United States District Judge

11

12

13

14

15

16

17

18
     G:\PRO-SE\PJH\HC.04\GARCIA,G1412.RUL.wpd
19

20

21

22

23

24

25   _____

26         [2] Juror nullification is not a right under the Constitution, laws or treaties of the United
     States.  *Crease v. McKune*, 189 F.3d 1188, 1194 (10th Cir. 1999) (noting no right to jury
27   nullification in the context of federal habeas review); *see also United States v. Powell*, 955 F.2d
     1206, 1213 (9th Cir. 1992) (federal defendants are not entitled to jury nullification instructions).
28   Any instruction that arguably impeded this non-existent right did not violate the Constitution,
     laws or treaties of the United States and cannot justify habeas relief.

                                              18

**United States District Court**
For the Northern District of California